UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELSA ANGELICA SOLARES-CASTELLANOS,<br>Petitioner,<br>v.<br>WARDEN, DESERT VIEW DETENTION FACILITY et al,<br>Respondents. | Case No. 5:26-cv-04430-MAR<br><br>ORDER GRANTING PETITION FOR HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE |

## I.

## INTRODUCTION

On August 6, 2026, Elsa Angelica Solares-Castellanos ("Petitioner"), proceeding through counsel, filed a Petition for Writ of Habeas Corpus ("Petition") by a Person in Federal Custody pursuant to 28 U.S.C. § 2241. ECF Docket Nos. ("Dkt.") 1 ("Pet"). Petitioner argues her re-detention in Immigration and Customs Enforcement ("ICE") custody violates his Fifth Amendment due process rights and the Immigration and Nationality Act ("INA") and seeks release. Id. at 10–11.[1] Respondents filed an Answer arguing that Petitioner is lawfully detained to effectuate

[1] All citations to electronically filed documents refer to the CM/ECF pagination.

her final order of removal. Dkt. 10. For the reasons set forth below, the Petition is **DENIED**.

## II.
## BACKGROUND[2]

Petitioner is a citizen of Guatemala who has lived in the United States since 1992. Pet. at 3. Petitioner received a final order of removal in 1995 and was released under an Order of Supervision ("OSUP"). Id. at 3, 4. Petitioner's removal was stayed on humanitarian grounds. Id. For the past thirteen years since receiving the OSUP, Petitioner has complied with the order, regularly attending every check-in with ICE and maintaining a clean criminal record. Id. Petitioner has two United States citizen children. Petitioner's children are 17 and 21 years old. The 21-year-old is a mechanical engineering student at U.C. Berkley and has filed an I-130 Petition for Alien Relative on Petitioner's behalf, seeking family-based permanent residency for Petitioner. Id. at 3. Petitioner was granted work authorization and paid income taxes. Id.

Petitioner was detained on July 29, 2026, when she voluntarily appeared at a routine ICE check-in. Id. at 4. Petitioner did not receive pre-deprivation notice or an opportunity to respond regarding the revocation of her release. Id.

## III.
## DISCUSSION

### A. APPLICABLE LAW

#### 1. INA

Detention, release, and removal of individuals ordered removed is governed by 8 U.S.C. § 1231(a). Johnson v. Arteaga-Martinez, 596 U.S. 573, 578 (2022). A

---

[2] The following facts are taken from the Petition and the attached exhibits. Respondents had the opportunity to dispute these facts or provide contrary facts, but declined to do so unless noted herein. Dkt. 12. Accordingly, the undisputed facts presented by Petitioner are conceded. See C.D. Cal. L.R. 7-12.

noncitizen shall be removed within 90 days of the removal order, subject to a potential 90-day extension. 8 U.S.C. § 1231(a)(1). However, once that period passes, and the noncitizen is not removed, they "shall be subject to supervision under regulations prescribed by the Attorney General." Id. § 1231(a)(3). The noncitizen may be detained beyond the removal period under certain conditions, but "if released, shall be subject to the terms of supervision in paragraph (3)." Id. § 1231(a)(6).

Sections 241.4 and 241.13 of Title 8 of the Code of Federal Regulations govern the release of noncitizens pursuant to 8 U.S.C. § 1231(a)—and the revocation of that release. Both sections allow release to be revoked when a noncitizen violates the conditions of their release. 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(1).[3] Section 241.13(i) allows DHS to revoke a noncitizen's OSUP and re-detain them "if, on account of changed circumstances, the [government] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Both sections establish certain required process for the revocation of release. Upon such revocation, the noncitizen (1) "will be notified of the reasons for revocation of his or her release" and (2) will be given "an initial informal interview promptly after his or her return to [] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." Id. §§ 241.4(l)(1), 241.13(i)(3). If the noncitizen continues to be detained after the informal interview, they shall be scheduled for the "normal review process," which begins with notification of a records review and scheduling of an interview, "which will ordinarily be expected to occur within approximately three months after release is revoked." Id. §§ 241.4(l)(3); 241.13(i)(2) ("[I]f the [noncitizen] is not released from custody following the informal interview . . . the provisions of § 241.4 shall govern the

[3] Section 241.4(l) also allows revocation "in the exercise of discretion when, in the opinion of the revoking official" certain other conditions are met, and section 241.13(i) also permits revocation "if, on account of changed circumstances, the [government] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Id. §§ 241.4(l)(2), 241.13(i)(2).

[noncitizen]'s continued detention pending removal."). "In simpler terms, in order to revoke release, the government must notify the noncitizen of the reason for the revocation and give them both an informal and formal interview." Delkash v. Noem, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *4 (C.D. Cal. Aug. 28, 2025).

**2. Due process**

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." Demore v. Kim, 538 U.S. 510, 523 (2003) (citing Reno v. Flores, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990).

In several recent decisions, courts in this District have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had been released shortly after their entry to the United States without notice or an opportunity to be heard. See Cruz v. Lyons, et al., No. 5:25-cv-02879-MCS-MBK (C.D. Cal. Nov. 6, 2025) at Dkt. 12 (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); Yataco v. Warden, Adelanto Det. Facility, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), adopted, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in); see also M.V.F. v. Santacruz, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioner's procedural due process claim under the familiar Mathews v. Eldridge framework, which considers: (1) the private

interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. Mathews, 423 U.S. at 335.

**B. ANALYSIS**

It is undisputed that Petitioner has been living in the United States since 1992. Pet. at 3. It is also undisputed that Petitioner was released on an OSUP fifteen years ago, and through that time, has not violated any term of the OSUP. Id. Thus, the Court concludes that once Petitioner was released from custody under the OSUP, she acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest is particularly strong here because of the length of time she has been in the United States. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Indeed, Petitioner has lived as a law-abiding individual for over thirty years, has received work authorization, is the mother of two U.S. citizen children, and is involved in her community. Pet. at 3–4. Petitioner's undisputed ties to the community further strengthen her liberty interest in remaining out of custody. See,

e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was detained without pre-deprivation notice or an opportunity to respond. Pet. at 2. Although Petitioner purportedly received notice of the reasons for revocation and an informal interview, due process requires meaningful notice and an opportunity to respond. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026. Petitioner is entitled to meaningful notice and an opportunity to respond. See Hashemi v. Noem, 809 F. Supp. 3d 1027 (C.D. Cal. 2025) (finding lack of meaningful notice where Petitioner was served with notice of revocation of OSUP after being detained and where Petitioner was not able to access counsel at the informal interview). Furthermore, the informal interview occurred on the same day that Respondents served the Notice of Revocation and arrested Petitioner. Courts considering similar circumstances have found due process concerns where the government conducts the informal interview immediately upon issuing a notice of revocation, thereby "essentially bar[ring] the noncitizen from being able to submit any evidence or information that may show revocation of their release is unlawful." Cruz v. Rios, No. EDCV 26-01374-MWF, 2026 WL 973367 (C.D. Cal. Apr. 8, 2026) (citing Kiwana v. LaRose, No. 3:25-CV-3678-JES-SBC, 2026 WL 102661, at *6 (S.D. Cal. Jan. 14, 2026); Abdullah v. Noem, No. 26-CV-176-BJC-BLM, 2026 WL 559774, at *3 (S.D. Cal. Feb. 27, 2026)). "What results from such a situation is a deprivation of any 'meaningful opportunity' for a petitioner to be heard on the incredibly important issue of re-obtaining their freedom." Id. (citing Minassi v. Noem, No. EDCV 26-00723-RGK (AYP), 2026 WL 923289, at *7 (C.D. Cal. Apr. 1, 2026)). Thus, the Court concludes that Petitioner's detention without pre-deprivation notice or an opportunity

to respond violated her procedural due process rights. Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained.").

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return [her] to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody on OSUP. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

The Court concludes that due process requires that Petitioner not be detained absent pre-deprivation notice of the reasons for revocation of her release and an opportunity to be heard prior to her re-detention. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Indeed, the re-detention of a noncitizen subject to a final order of

removal is governed by 8 C.F.R. § 241.13. The regulation was "intended to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release." Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) (internal quotation marks, brackets, and ellipses omitted) (emphasis added); see also Zinermon, 494 U.S. at 127 ("Applying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty." (emphasis in original)); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.' " (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)) (emphasis in original)). The Court concludes that "to protect Petitioner['s] due process rights, the government must give [her] notice before re-detaining [her] for purposes of removal." Nak Kim Chhoeun v. Marin, 442 F. Supp. 3d 1233, 1251 (C.D. Cal. 2020); Movsesyan v. Bondi, No. 5:26-CV-00875-MBK, 2026 WL 712824, at *5 (C.D. Cal. Mar. 9, 2026) ("the Mathews v. Eldridge, 423 U.S. 319 (1976) framework supports Petitioner's claim that that Government may only re-detain him after affording him meaningful pre-deprivation process… separate and apart from any procedures required by the regulations"). Even where there may be no barrier to removal, pre-deprivation notice and an opportunity to respond, "provides the additional value of allowing Petitioners to say goodbye to their families, and wrap up their affairs, including ensuring adequate care for their loved ones and notifying their employers." Id. "In contrast, the administrative and fiscal governmental burdens associated with notice are slight, and do not warrant denying Petitioners notice." Id.

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees and costs. Pet. at 11. The Court will consider an application under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final

judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## IV.

## ORDER

**IT IS THEREFORE ORDERED**:

(1) the Petition is **GRANTED**;

(2) Respondents are **ORDERED** to immediately release **Elsa Angelica Solares-Castellanos, (A# 070-501-566)** from custody subject only to the conditions of her prior Order of Supervision and return all property taken from Petitioner during her arrest and processing into detention;

(3) Respondents are **ORDERED** to file a Notice of Compliance within forty-eight hours of this Order;

(4) Respondents are **ORDERED** not to re-detain Petitioner without first following all procedures set forth in 8 C.F.R. §§ 241.4, 241.13, and any other applicable statutory and regulatory procedures, and the Due Process Clause of the Fifth Amendment, including providing pre-deprivation notice and an opportunity to be heard prior to her-re-detention.

Dated: August 20, 2026

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge